14844

WHITE v. NICHOLS *ET AL.*

(1 S. E. (2d), 916)

*Messrs. Haynsworth & Haynsworth* and *H a m i l t o n, Gaston & Hamilton,* for appellants,

*Mr. J. Means McFadden,* for respondent,

March 15, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

There is but one issue in this case. Is Maxine Nichols an immaterial defendant, and joined solely for the purpose of laying venue in Chester County, or, stated conversely, is Maxine Nichols a *bona fide* defendant?

This action arose out of a collision between an automobile operated by the appellant, Frank L. Buxton, the alleged agent and representative of his co-appellants, and a motorcycle driven by respondent. The collision occurred on West End Street near the intersection of Oakland Street in the

City of Chester. Appellants are residents of Greenville County, and their co-defendant is a resident of Chester County.

We here set out paragraph three of the complaint:

"That, on the morning of June 6th, 1938, at approximately eight o'clock A. M., as plaintiff was proceeding from his home on West End Street of the City of Chester to his place of business on Columbia Street of said City, riding upon his motorcycle, and riding in an easterly direction, approaching the intersection of said West End Street and Oakland Avenue of said City an automobile, driven and operated by defendant Maxine Nichols, was driven from said Oakland Avenue into West End Street, *causing plaintiff herein to decrease the speed of his motorcycle to such an extent that he was traveling at an extremely slow rate of speed; and that, as plaintiff decreased his speed as aforesaid, and was proceeding at a very slow rate of speed, and in a very careful, cautious, and prudent manner, keeping to his right of the center of said West End Street, he and the motorcycle upon which he was riding were run into, against and over from his rear* by defendant Plymouth Coach, S. C. 1937-1938 License No. 25—604, said Plymouth Coach being, at said time and place, driven and operated by defendant Frank L. Buxton; and that, in the ensuing collision resulting from his being run into from behind as aforesaid, plaintiff was thrown upon the pavement of said West End Street, was knocked unconscious, and was seriously, dangerously, and critically injured, and suffered severe and lasting injuries and damages." (Italics added.)

It is then alleged that the injuries to respondent were directly and proximately caused by and due to one or more of the careless delicts of the appellant Buxton in the operation of the automobile, concurring with one or more of the careless acts of the defendant Maxine Nichols. The acts of negligence, etc., on the part of the appellant Buxton are set out at great length. Those on the part of Maxine Nichols are not so numerous. Sub-sections (d) and (e) are as follows:

"(d) In that, despite the fact that West End Street of the City of Chester is an express highway, and that those traveling upon said West End Street have the right of way over those entering from Oakland Avenue, defendant Maxine Nichols drove the motor vehicle which she was operating from Oakland Avenue into West End Street in such manner as to make it necessary for plaintiff to slow down and almost stop in order to prevent a collision between plaintiff and defendant Maxine Nichols;

"(e) In that defendant Maxine Nichols entered West End Street disregarding the 'Stop' sign on Oakland Avenue and in violation of the ordinance of the City of Chester in such cases made and provided;"

It will be noted from the above that it is very questionable, conceding the allegations of the complaint to be true, if the injury to respondent was proximately caused by the alleged concurring acts of negligence of Maxine Nichols, or was only remotely caused thereby. The allegations are definitely that such act on the part of Miss Nichols caused respondent "to decrease the speed of his motorcycle to such an extent that he was traveling at an extremely slow rate of speed; and that, as plaintiff (respondent) decreased his speed as aforesaid, and was proceeding at a very low rate of speed, * * * he and the motorcycle upon which he was riding were run into, against and over from his rear * * *" by the automobile operated by Buxton. And in allegations of negligence of Miss Nichols, that she "drove the motor vehicle which she was operating from Oakland Avenue into West End Street in such a manner as to make it necessary for plaintiff (respondent) to slow down and almost stop in order to prevent a collision between plaintiff (respondent) and defendant Maxine Nichols."

Before answering appellants served notice of motion for a change of venue upon the grounds that they are residents of Greenville County, are the real defendants, and that Maxine Nichols, a resident of Chester County, was made a party

defendant solely in order to lay venue in the last-mentioned county where the plaintiff-respondent resides.

Maxine Nichols answered denying all allegations of negligence on her part, and specifically denied driving out into West End Street, setting forth that her car was motionless at the stop sign at the intersection of said streets at the time of the collision between the motorcycle and the car driven by Buxton.

At the hearing on the motion, in addition to the affidavits hereinafter referred to, it was brought out that on July 8, 1938, more than a month after the cause of action, if any, arose, respondent had filed an attachment suit in the Court of Common Pleas for Chester County against the defendant automobile, Frank L. Buxton and Meadors Manufacturing Co., without naming Maxine Nichols as a party defendant, and in his affidavit for a warrant of attachment against the automobile of appellants, alleged that his injuries and damages were caused and occasioned solely and entirely by the reckless manner in which Buxton was driving and operating the automobile upon West End Street in the City of Chester.

A synopsis of the affidavits of appellants used on the hearing is: (1) Frank L. Buxton, that the automobile on Oakland Avenue, operated by a party he afterwards learned was Miss Nichols, was noticed by him, and that this automobile did not enter West End Street prior to the collision between his car and the motorcycle of respondent; and that it had nothing whatsoever to do with the occurrence of the accident. (2) Frank R. Caldwell, a life-long resident of Chester, one of the first ones to reach the scene of the accident, and who helped Chief of Police of Chester, S. T. Weir, put respondent in the automobile of Miss Nichols, which was stopped in Oakland Avenue. His attention was attracted to the scene by the motor of the motorcycle running fast where it lay upon the street, and at·that time the automobile of Miss Nichols was in Oakland Avenue entirely and had not

been driven out on West End Street at all. (3) S. T. Weir, Chief of Police, Chester, arrived "right after" accident happened. "Miss Maxine Nichols had stopped her car in Oakland Avenue. It was not out in West End Street at all. She was still sitting in her car when I got there." "From what I saw Miss Nichols could have had nothing whatever to do with the accident." (4) J. C. Cornwell, deputy Clerk of Court for Chester County, that the attachment proceeding heretofore referred to was filed July 8, 1938, and withdrawn from the files of his office on July 30, 1938, and that at the request of respondent's attorney he entered on the Rule Book "Withdrawn and never begun." On October 11, 1938, the present action was filed or begun, but no warrant of attachment was asked for or issued. (5) S. S. McCullough, as to facts from which no other conclusion could be reached but that a money judgment against Miss Nichols would be unenforceable. (6) Miss Maxine Nichols, that she stopped on Oakland Avenue at its intersection with West End Street. She saw respondent approaching on his motorcycle and did not enter upon West End Street for that reason. Also saw the Buxton car and the collision. Following the collision, Chief Weir and Frank Caldwell put "Buck" (respondent) in her car and she carried him to the hospital. "I did not run my car into West End Street at all until after 'Buck' White had been put into it." A money judgment against her would be worthless.

On behalf of respondent: (1) Affidavit of E. M. White, a brother of respondent, that he visited the scene of the accident with Buxton two or three hours thereafter, and that Buxton told him that he was coming down the hill of West End Street of Chester, proceeding toward the main business section of Chester, when he perceived deponent's brother on the motorcycle in front of him, and that deponent's brother had slowed down the speed of the motorcycle to such a degree that deponent was advised that Buxton thought he was going to stop the motorcycle; that Buxton told deponent that there was an automobile coming out of

a side street which runs into West End Street, and Buxton pointed out the street from which he said the automobile was coming, which was Oakland Avenue of this City of Chester; that Buxton pointed out the street from which he said the automobile was coming, since he apparently did not know said street by name, but that the street pointed out by Buxton was Oakland Avenue; that Buxton advised deponent that, as said automobile was coming out of Oakland Avenue into West End Street, deponent's brother, John M. White, slowed down the speed of his motorcycle and that the collision occurred when Buxton ran into the motorcycle as he attempted to pass it. (2) Affidavit of Honorable J. Means McFadden, attorney for respondent, explaining that the first proceeding was hastily commenced, and upon very little investigation; that the verified complaint now before the Court represents the true facts and circumstances as indicated to him from a careful investigation.

Section 422 of the Code provides that an action of this nature *shall* be tried in the county in which the defendant resides, and if there be more than one defendant, then it *may* be tried in any county in which one or more of the defendants reside at the time of the commencement of the action. This of course means a material and *bona fide* defendant against whom a cause of action has been stated, for our Court has ruled that the mere joining of a party as a defendant for the purpose of laying venue in a county different from the residence county of the real defendant will not suffice. Therefore it is recognized that upon motion timely made, the Court will inquire into facts of the case sufficiently to determine the probability of a defendant being material when venue is dependent upon such defendant.

In writing the opinion of the Court in *Rankin Lumber Co. v. Gravely,* 112 S. C., 128, 99 S. E., 349, 350, Mr. Justice Watts (afterwards Chief Justice), stated: " * * * An immaterial defendant cannot be joined merely for the purpose of conferring jurisdiction and to have a trial in a

different county to that wherein a defendant resides and to deprive the defendant of the substantial right of trial in the county wherein he resides."

In *Rosamond v. Lucas-Kidd Motor Co. et al.,* 183 S. C., 550, 191 S. E., 516, 518, is this language: "The right of a defendant to have a case against him tried in the county in which he resides is a substantial right (*Rankin Lumber Co. v. Gravely,* 112 S. C., 128, 99 S. E., 349; *Anderson v. Baughman et al.,* 167 S. C., 164, 166 S. E., 83), and the party asserting the right to maintain an action in a different county should at least 'balance' the testimony showing such right."

In passing upon whether a defendant is immaterial and has been joined merely for the purpose of permitting an action to be tried in a county other than the county where the real defendant or defendants reside, the fact that the complaint states a cause of action against the challenged defendant, or that the same testimony given on the hearing of the case on its merits would require the issue of the liability of such defendant to be submitted to the jury, does not necessarily govern, because as stated in *Rosamond v. Lucas-Kidd Motor Co., supra,* "on a motion of this nature the Judge before whom it is made, sits both as Judge and jury." In that case, it was recognized that "had the same testimony been adduced upon a trial of the case on its merits before a jury, the question of the liability of H. L. Rosamond would have necessarily been submitted to the jury," yet this Court reached the conclusion that there had been a fraudulent joinder of H. L. Rosamond as a defendant, and reversed the ruling made thereabout by the Circuit Judge. This was also held in *Adams et al. v. Fripp et al.,* 108 S. C., 234, 94 S. E., 109, 110, where the Court, through Mr. Justice Gage, reversing the order denying a change of venue, stated: "Of course, we do not conclusively find the ultimate fact that Fripp did not collude with the Horlbecks; that is the issue to be tried in the action. We only conclude

that upon the showing made below, for the purposes of right venue, the movants have plainly proved enough to entitle them to the order they asked for."

As stated in the *Rosamond case,* this Court is always reluctant to reverse the ruling of a Circuit Judge, especially when the main issue is one of fact, but the testimony of the movants so overbalances that of respondent we can reach no other conclusion than that the appellants would be denied a substantial right if the change of venue is not granted.

It may be well to state that the defendant, Maxine Nichols, does not resist the motion, but indirectly joins therein. And that in joining Miss Nichols as a defendant, counsel for respondent acted in good faith on information furnished him.

The judgment of this Court is that the order appealed from be reversed, and it is ordered that the case be transfered to the Court of Common Pleas for Greenville County.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.