15313

DUNBAR v. EVINS, SOUTHERN RY.-CAROLINA DIVISION, AND SOUTHERN RAILWAY COMPANY, BOTH CORPORATIONS

(17 S. E. (2d), 37)

*Mr. Frank G. Tompkins,* of Columbia, and *Mr. Samuel R. Watt,* of Spartanburg, for appellants Southern Railroad,

Carolina Division, and Southern Railway Company,

*Mr. Horace L. Bomar, Jr., Mr. Donald Russell, Mr. Rufus M. Ward,* all of Spartanburg, for appellant Evins,

Counsel for appellant

October 3, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE G. B. GREENE.

Plaintiff, R. B. Dunbar, commenced this action in the Court of Common Pleas for Union County, S. C., demanding $25,000.00 actual and punitive damages against the defendants, J. C. Evins, a resident of Spartanburg County, S. C., and Southern Railway, Carolina Division, a corporation under the laws of South Carolina, and Southern Railway Company, a corporation under the laws of the State of Virginia, both of said corporations having offices and agents in Union County, S. C.

The material allegations of the complaint are:

"3. That in connection with the operation and maintenance of said railroad and right-of-way, said corporations own, control and maintain upon said right-of-way in said Union County, certain warning signs at grade crossings and a telegraph or telephone line consisting of wires strung from upright wooden poles located on said right-of-way.

"4. That within the County of Union and about two miles northwest of the said City of Union, the State Highway running south from Kelly's enters the State Highway running between Union and Spartanburg; that said highways are both heavily travelled and much used by the public for a great many years and that said Union Highway is one of the main travelled east and west state highways; that the said Kelly's highway runs across the track and right-of-way of said railroad corporation defendants immediately before

entering said Union highway, that before crossing said tracks, a traveller on said Kelly's road approaching said highway intersection does not have full and unobstructed view of said Union road to the south because of a dip in said road and because of the railroad embankment intervening in the line of vision and partially hiding said road; but that after crossing said railroad tracks there would remain sufficient room on the Kelly's road to permit such traveller to look out for traffic before entering said Union road were it not for the obstructions to vision hereafter mentioned; that said highway intersection is a location of special hazard in that there is the railroad crossing aforesaid; and in that immediately northwest of said highway intersection the Union road cuts sharply to its left and around a hillside which completely obscures said road and traffic thereon approaching the intersection, except for a short distance adjacent to said intersection; and in that immediately opposite said intersection there is a store and filling station, so that the driveway into and the service yard of the filling station are practically in continuation of said Kelly's road for a traveller turning therefrom left towards Union; and in that in addition to said filling station driveway there are several nearby dwelling houses so that the roads and driveways giving access thereto come into the Union road close together and about opposite the entrance of the Kelly's road; that prior to the collision hereinafter alleged, the State Highway Department had placed a short distance south of the highway intersection aforesaid a warning sign reading 'Slow' on the east side of the Union road.

"5. That along the east side of said Union road and on said railroad right-of-way, said defendant railroad corporations had erected and were at the time herein mentioned maintaining a telegraph or telephone line upon wooden poles, and said poles being erected and placed in such a way that when a traveller on said Kelly's road about to enter said Union road had arrived at the narrow space between the railroad tracks and the edge of the Union road,

the said line of poles greatly interfered with and obstructed the view of the Union road to the south; that in addition to said poles, the said defendant railroad corporations had erected and were at the times herein mentioned maintaining on said right-of-way a large warning sign a short distance south of said highway intersection and on the east side of said Union road and about in line with said poles and about the height of the line of vision of such traveller about to enter said Union road, and so being placed, the said warning sign further interfered with and obstructed the traveller's view of said road; that in addition to said poles and warning sign, said defendant railroad corporations had erected and were at the times herein mentioned maintaining on their said right-of-way a large metal sign board and cross arm device on an upright iron post; that said sign board is a large square solid plate fixed about half way up said upright post, and that cross arm consists of a horizontal arm above the sign board aforesaid, at each end of which is hung a large round solid plate; that said device was placed so as to serve as a railroad crossing warning to travellers on said Union road approaching said highway intersection from the south and that the said device was placed at the southeast corner of said intersecting roads and practically in line with the posts and warning sign aforesaid, and being so placed it further greatly interfered with and obstructed the view of said Union road; that in addition to the poles, warning sign and cross arm device aforesaid, the said defendant railroad corporations, at the times herein mentioned, were permitting and allowing the erection and maintenance on said right-of-way aforesaid of various State Highway signs and other devices substantially in line with the obstructions aforesaid and which were placed in such position that they further interfered with and obstructed view of said Union road in both directions; that the obstructions to vision aforesaid were and are so placed that their effect in obstructing the view of the Union road is not apparent to a traveller approaching the same on said Kelly's

road until suddenly and without warning said obstructions practically shut off his view of the Union road at the time he is about to enter and is entering the same immediately after crossing said railroad tracks and while he is in the remaining part of Kelly's road from which he would have ample opportunity to look out for traffic after crossing the railroad were it not for said hindrances and obstructions to vision.

"6. That on or about the 23rd day of March, 1938, plaintiff was a traveller in an automobile coupe going west on Kelly's road and entering said Union road and turning to his left in order to proceed toward the City of Union; that plaintiff approached said railroad crossing and highway intersection at a slow rate of speed and at a time when there appeared to be no traffic approaching from plaintiff's right and no traffic about to enter said highway from said filling station service yard and driveway or from said nearby roads and driveways of dwelling houses; that plaintiff saw an automobile approaching him from his left on the Union road; that as he crossed the railroad, plaintiff slowed up for the approaching car to pass and then plaintiff saw the automobile of the defendant, J. C. Evins, approaching on his left at such a distance away as to afford plaintiff ample time to enter and cross the Union road before its arrival; that because of the sudden and unexpected obstruction to plaintiff's vision aforesaid, plaintiff was deprived of opportunity to judge the speed and management of the Evins car, but under the circumstances was obliged to rely on its being properly operated; that plaintiff entered said Union road and was proceeding on his right side thereof when he was suddenly confronted by the Evins automobile, approaching plaintiff from the south and on its wrong side of the road and travelling at a terrific and fearful rate of speed; that realizing that said Evins automobile, which was a high powered and heavy Cadillac sedan, was not in the control of its driver so as to be able to stop the same or slow the same so as to yield the right-of-way to plaintiff who had

entered the highway intersection, and realizing that a collision was imminent and in hope of avoiding same or of ameliorating its consequences, plaintiff cut his coupe off to the left, but that said Cadillac automobile nevertheless cut off to its left at the same time so as to get back on its right side of the road, and ran into and upon plaintiff's coupe with tremendous force and violence, smashing and hurling the same backwards and completely demolishing the same and subjecting plaintiff to fearful impact and shock, so that plaintiff lost consciousness and remained unconscious for a great time and sustained the breaking of both his legs and numerous serious and painful lacerations, contusions and injuries, so that * * *.

"7. That the injuries and damage to plaintiff aforesaid resulted from the joint and concurrent negligence, carelessness, wantonness and willfulness of defendants, combining and concurring as a proximate cause thereof in the following respects and that all of said acts and omissions concurred and combined and cooperated to produce the said injuries and damage, to wit:

"(a) In that said defendant railroad corporations erected and maintained, and permitted and caused to be erected and maintained, poles and other structures on their right-of-way in such a manner and at such places as to constitute a condition of danger for the travelling public which would in all probability or very likely cause some injury or some kind to members of the public, in that such poles and other structures greatly interfered with the view of the traveller on the public highway and in that they constituted a sudden and surprise obstruction and hindrance to the view of a traveller at the time when he stood most in need of and had a right to expect a clear view, and in that thereby plaintiff was precipitated into a sudden dangerous emergency directly in front of the Cadillac automobile of J. C. Evins approaching and being operated carelessly and recklessly as herein alleged, and in knowingly and consciously erecting, maintaining and permitting the same in reckless and utter

disregard of the safety of the public travelling said highways."

Sub-paragraphs (b), (c), (d), (e) and (f) immediately following the above set out the specifications of negligence, wantonness and willfulness charged against the defendant, J. C. Evins.

Both corporate defendants demurred to the complaint upon the grounds (1) that no acts of negligence was charged against them that could have been the proximate cause of plaintiff's injuries, and (2) that the complaint affirmatively showed that plaintiff's injuries were caused by his own negligence, wantonness and willfulness, or that he negligently contributed thereto.

The defendant, J. C. Evins, moved for an order transferring the cause for trial to Spartanburg County, wherein he resided, upon the ground that he is the only real defendant in the case and that the corporate defendants had been made parties solely for the purpose of giving jurisdiction to Union County. The motion was based upon the pleadings and a number of affidavits and photographic exhibits.

By agreement of counsel for all parties the demurrer and the motion for a change of venue were heard together by Hon. A. L. Gaston, presiding Judge, at Union, S. C. At the hearing on the motion for change of venue plaintiff also submitted affidavits and photographic exhibits. On March 9, 1940, Judge Gaston signed a single order in which he overruled the demurrer of the corporate defendants and refused the motion for a change of venue sought by the defendant, J. C. Evins.

From so much of Judge Gaston's order as overruled their demurrer the corporate defendants appealed to this Court upon five exceptions which according to the briefs of counsel for both parties raise these two questions:

"1. Do the facts set out in the Complaint show a wrong suffered by the plaintiff on the one hand and a duty or delict of the defendant railway companies on the other which contributed as a proximate cause to the injury or wrong?

"2. Do the allegations of the Complaint show contributory negligence by the plaintiff which constitute a proximate cause of the injury?"

From so much of said order as refused his motion for a change of venue the defendant, J. C. Evins, appealed upon nine exceptions which raise one general question, to wit: Under the law and the evidence submitted to him, was it error on the part of the presiding Judge to refuse to grant the motion for a change of venue?

In passing upon the questions raised by the corporate appellants all allegations of the complaint must be considered true, and no aid can be derived from the affidavits and exhibits used in connection with the motion for a change of venue. It is our opinion that the complaint states facts sufficient to constitute a cause of action against the appellants. They contend that, as respondent had passed the alleged obstructions to his view, crossed the highway intersection and was proceeding down the Union road, the danger caused by said obstructions had ceased to exist and could not contribute as a proximate cause to respondent's injuries. But the complaint alleges that the effect caused by the dangerous obstructions did continue in that "thereby plaintiff was precipitated into a sudden dangerous emergency" from which he could not extricate himself and which resulted in the collision and injuries to him.

In view of the allegations of the complaint next above referred to we cannot hold that the complaint affirmatively shows that respondent was guilty of such contributory negligence as would bar a recovery in this action.

From the foregoing it follows that the exceptions of the corporate appellants must be overruled.

In passing upon a motion for change of venue in ■■ cases like the one before us certain applicable principles of law are well established by our decisions. The right of a resident defendant to a trial in the county of his residence assured him under Section 422 of the Code of Civil Procedure (1932) is a substantial right; and a

plaintiff who seeks to defeat a defendant's right to a trial in the county of the latter's residence by the joinder as a defendant of a resident of the county in which plaintiff has laid his venue, must, when the issue of venue is raised, establish, not by a scintilla of evidence, but by at least a balance of the evidence, that he has a valid cause of action against the other defendant, and should he fail in this, it is the duty of the Court to give the defendant seeking a change of venue a right of trial in the county of his residence. In passing upon whether a defendant is immaterial and has been joined merely for the purpose of permitting an action to be tried in a county other than the county where the real defendant or defendants reside, the fact that the complaint states a cause of action against the challenged defendant, or that the same testimony given on the hearing of the case on its merits would require the issue of the liability of such defendant to be submitted to the jury, does not necessarily govern, because on a motion of this nature the Judge before whom it is made sits both as Judge and jury. *Adams v. Fripp,* 1917, 108 S. C., 234, 94 S. E., 109; *Rosamond v. Lucas-Kidd Motor Company,* 1937, 183 S. C., 544, 191 S. E., 516; *White v. Nichols,* 1939, 190 S. C., 45, 1 S. E. (2d), 916.

The collision out of which this controversy arose took place between automobiles of the respondent and the appellant, Evins, in the afternoon of March 23, 1938, on the main highway running between Spartanburg and Union at a point about two and one-half miles north of Union. The appellant Evins' automobile was headed north towards Spartanburg; the respondent driving south toward Union, had entered this main highway from an intersecting highway (Kelly's road) at least two hundred feet from the point of collision. Before reaching the intersection, respondent, travelling in a southwesterly direction on Kelly's road, had crossed the railroad tracks of the respondent railroad companies, which said tracks traversed Kelly's road in a northerly and southerly direction, the west rail of this railroad cross-

ing being seventy-six feet east of the eastern edge of the aforementioned highway intersection. Along the railroad right-of-way on the southwestern side of this crossing are the usual railroad crossing signals and telephone poles and two highway warning signs and two or three mail boxes. Shortly after crossing the railroad tracks respondent saw Evins' automobile approaching the highway intersection from the left. After crossing the railroad track and after passing all of the alleged obstructions, respondent had twelve feet to travel immediately before reaching the eastern edge of said highway intersection upon which no property of the railroad or anyone else was located. Respondent travelled these twelve feet, after passing the alleged obstructions, to the intersection of the Union highway; he entered the said highway intersection, crossing to the west side thereof, and travelled south on the Union-Spartanburg highway a distance of not less than two hundred feet before the collision occurred. The foregoing is a statement of undisputed facts as shown by the evidence adduced at the hearing on said motion.

In addition to the foregoing undisputed facts the affidavits and photographic exhibits clearly show that after passing the alleged obstructions, which were twelve feet from the eastern edge of the highway intersection, respondent had a clear and unobstructed view to his left of the Union highway for a long distance, many times the distance travelled by him down the Union road to the point of the collision. Respondent does not claim that at any time after passing the alleged obstructions and before he crossed the highway intersection he looked for Evins' automobile, which he had previously seen approaching on his left, or took any other precautions whatsoever for his own safety. His verified complaint states that he drove to the highway intersection, crossed to the other side of same, and was proceeding toward Union when he discovered the danger ahead of him. From the overwhelming weight of the evidence the conclusion is inescapable that either respondent,

after passing the alleged obstructions, failed to exercise even a slight degree of care for his own safety, or, although respondent, after passing the alleged obstructions, had a clear and unobstructed view of the Union highway for a long distance, he could not, because the Evins automobile was so far away, discover its "speed and management" until he had travelled the intervening distance from the alleged obstructions to the highway intersection, crossed over said intersection and proceeded along Union highway for a considerable distance. Respondent's version of the relative rate of speed of the two automobiles, that his was being driven slowly and that Evins' was being driven at a "terrific and fearful" rate of speed, was not disputed at the hearing. Then, in view of the distance travelled by respondent after he left the alleged obstructions behind and until the collision occurred the latter proposition appears to be true. In neither event, however, could the corporate appellants be held liable for respondent's injuries. We find and hold, therefore, that the overwhelming weight of the evidence before us shows that appellant, Evins, is the only real defendant in this case, and that it was error not to grant his motion for a change of venue to Spartanburg County.

For the foregoing reasons so much of the order appealed from as overruled the demurrer of the corporate appellants should be affirmed, and so much of said order as refused the motion for a change of venue to Spartanburg County is reversed; and the case is hereby remanded with instructions to transfer same to the Court of Common Pleas for Spartanburg County, S. C., for trial and other proceedings.

Mr. Chief Justice Bonham and Messrs. Associate Justices Carter, Baker and Fishburne concur in part and dissent in part.

Mr. Associate Justice Baker (dissenting) :

I respectfully dissent from so much of the opinion of Mr. Acting Associate Justice Greene as holds that a cause of action has been stated against the appellants, Southern Railway, Carolina Division, and Southern Rail-

.way Company, for the reason that in Paragraph 6 of the complaint it is alleged that "plaintiff saw the automobile of the defendant, J. C. Evins, approaching on his left at such a distance away as to afford plaintiff ample time to enter and cross the Union road before its arrival"; and it appears from other allegations following and in the same paragraph that he would have safely entered and crossed the intersection except for the unlawful manner in which the Evins car was being operated, from which the conclusion is inescapable that the sole proximate cause of respondent's injury and damage was the unlawful operation of the Evins automobile.

It is my opinion that the Circuit Court erred in failing to sustain the demurrer to the complaint insofar as it affects the corporate defendants.

Mr. Chief Justice Bonham and Messrs. Associate Justices Carter and Fishburne concur.